UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRIAN THOMAS MERRILL,

                Plaintiff,

v.                           Case No. 3:15-cv-1220-J-39JBT

JULIE L. JONES, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

                Defendants.

_____

**ORDER**

## I.   Status

Plaintiff Brian Thomas Merrill, an inmate of the Florida Department of Corrections, is proceeding on a pro se Amended Civil Rights Complaint (Amended Complaint) (Doc. 25). Plaintiff names the Defendants in their individual capacities. Id. Defendants Certain, Hale, Jones, Miara, Nunley, and Sievers filed a Motion to Dismiss Amended Complaint (Defendants' Motion to Dismiss) (Doc. 27), and Plaintiff filed his Response to Defendants' Motion to Dismiss Amended Complaint (Response) (Doc. 32).[1] Defendant Landrum filed a separate Motion to Dismiss Amended Complaint (Landrum's Motion to Dismiss) (Doc. 36), and Plaintiff filed his Response to Defendant Landrum's Motion to Dismiss Amended Complaint (Response

_____

[1] The Court advised Plaintiff concerning a motion to dismiss and provided Plaintiff with an opportunity to respond. Order (Doc. 5).

to Landrum's Motion) (Doc. 40).  Along with his verified Amended
Complaint,[2] Plaintiff submitted Exhibits (Docs. 25, 32, & 40).

This is a civil rights action for compensatory and punitive
damages brought by a state prisoner under 42 U.S.C. § 1983.
Plaintiff claims he was subjected to the excessive use of force, a
beating, by Defendants, state corrections officers, in violation of
Plaintiff's Eighth Amendment right to be free from the infliction
of cruel and unusual punishment.  More specifically, he alleges
that Defendants Michael J. Hale, Scott A. Nunley, Kenneth J.
Certain, Jeffrie D. Miara, and Kevin E. Sievers brutally beat him
at Suwannee Correctional Institution (SCI) on February 25, 2014.
Amended Complaint at 6.[3]  He also claims that Defendant Julie L.
Jones, the current Secretary of the Florida Department of
Corrections, is liable for the conduct of these officers, because
she did have, or should have had, reasonable knowledge that there
was a surge in excessive force complaints against SCI officials
prior to this event, requiring her to take appropriate
administrative actions to prevent such unconstitutional actions by

---

[2] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir.
2014) (per curiam) (citations omitted) ("The factual assertions
that [Plaintiff] made in his amended complaint should have been
given the same weight as an affidavit, because [Plaintiff] verified
his complaint with an unsworn written declaration, made under
penalty of perjury, and his complaint meets Rule 56's requirements
for affidavits and sworn declarations.").

[3] In this opinion, the Court references the document and page
numbers designated by the electronic filing system.

the officers of SCI.  Id. at 7.  Finally, Plaintiff asserts that Defendant Chris P. Landrum, the former Warden of SCI, should be held accountable for the actions of his subordinate officers because Landrum did have, or should have had, reasonable knowledge of the alarming increase in excessive uses of force at SCI during the years 2013-2014.  Id.  Plaintiff claims that Landrum failed "to take immediate therapeutic measures" to forestall the February 25, 2014 incident, and to preserve videographic records.  Id.

Plaintiff provides the following statement of facts in relevant part.  On February 24, 2014, at approximately 9:00 a.m., Sergeant William B. Summerall ordered Plaintiff to the sally-port area of O dormitory for a pre-confinement search and inventory of personal property.[4]  Id. at 7-8.  Summerall informed the shift supervisory, Captain Ratliff that Plaintiff had violated the rules by giving another inmate a tattoo.  Id.  Summerall requested approval to place Plaintiff in confinement pending disciplinary action.  Id.  Ratliff denied this request, and instructed Summerall to write a "walking" disciplinary report for possession of contraband.  Id.

After Plaintiff was returned to his assigned cell, Summerall told Plaintiff that he would pay dearly for that.  Id.  Summerall

---

[4] Although Plaintiff refers to February 25, 2014 on page 7 of the Amended Complaint, apparently he is referring to the events that he alleges took place the day before, February 24, 2014, and his February 25, 2014 reference is a typographical error.

- 3 -

announced that there would be a shake down the following morning. Id. The next day, February 25, 2014, the officers conducted a shake down, but Plaintiff was excluded from the orders. Id. at 9. Summerall encouraged the inmates to violently respond to this situation by attacking Plaintiff. Id. at 8-9. Thereafter, Summerall and Plaintiff exchanged unkind words, and Summerall told Plaintiff that some gang members owed him, and Plaintiff would be taken care of shortly. Id. at 9.

At approximately 9:00 a.m., Officer Baldwin ordered Plaintiff to the foyer of O dormitory. Id. Plaintiff noticed Officer Herring and three "Latino-looking" inmates standing near the supply room of the sally-port. Id. Plaintiff went to the control station and declared a mental health emergency. Id. Summerall ordered Plaintiff to step into the sally-port. Id. at 10. The sally-port is out of the range of security cameras. Id. Summerall recently returned to duty after being on administrative leave for an "alleged beating of an inmate" in the sally-port area. Id. Plaintiff refused Summerall's order. Id. Plaintiff asked to see the Captain. Id. Summerall angered, attempted to strike Plaintiff with a clenched fist, but Plaintiff stepped out of the way, and Plaintiff struck Summerall in the face with a clenched fist. Id. Officer Herring grabbed Plaintiff from behind, and Plaintiff "defend[ed] himself[.]" Id. Someone summoned additional staff to quell the disturbance. Id.

- 4 -

Additional officers arrived, and an officer struck the base of Plaintiff's skull with a heavy, blunt object, slamming Plaintiff face-first onto the concrete floor.   Id.   Officers immediately handcuffed Plaintiff behind his back.   Plaintiff did not resist being placed in restraints as he lay unmoving on the floor.   Id.

At this point, Hale stepped on Plaintiff's neck, pinning Plaintiff's head sideways against the floor.   Id. at 11.   Someone sprayed chemical agents into Plaintiff's eyes, nose, and mouth while Miara, Sievers, and Nunley kicked Plaintiff in the ribs and abdominal region and stomped on his lower spine.   Id.   Hale and Certain pulled Plaintiff to a standing position and drove him headlong into the bars of the sally-port gate.   Id.   Nunley ordered the officers to get Plaintiff off camera.   Id.   Hale and Certain pulled Plaintiff through the sally-port area and rammed his head into the exterior door.   Id.   From the control room, Officer Baldwin disengaged the mechanical lock on the door.   Id.

They exited O dormitory.   Id.   Nunley chemically sprayed Plaintiff.   Id.   As Plaintiff was slammed against the side of the building, Nunley chemically sprayed Plaintiff again.   Id.   Nunley, while stating that Plaintiff would learn his lesson about placing his hands on officers, bent Plaintiff's little finger on his right hand backwards to his wrist, breaking the finger in several places. Id.   Someone threw Plaintiff down on the walkway, and Nunley chemically sprayed Plaintiff.   Id.   Hale repeatedly punched

Plaintiff on the right side of his face and head with a pair of handcuffs, causing hematomas, a ruptured ear-drum, lacerations, and contusions.  Id.  Certain repeatedly struck Plaintiff on the left temporal region of his head with a walkie talkie radio.  Id.  Miara and Sievers kicked Plaintiff in the ribs, back, legs, and groin area.  Id.  Plaintiff briefly lost consciousness.  Id.

Plaintiff regained consciousness and found himself near the security gate of P dormitory.  Id.  Hale and Certain struck Plaintiff in the head and torso.  Id.  Captain Ratliff arrived and told the officers to stop striking Plaintiff and to put him in confinement without further incident.  Id.  Officers escorted Plaintiff to P dormitory for a decontamination shower prior to a post-use-of-force medical screening and pre-confinement physical. Id.  An officer used a hand-held video camera to record Plaintiff's movements in P dormitory.  Id.  After showering, Plaintiff turned to the camera and complained about being hit with handcuffs and radios.  Id.

After being placed in restraints, officers escorted Plaintiff to the confinement unit medical room.  Id. at 13.  Nunley told Plaintiff that officers would beat him to death and bury him under the dormitory if Plaintiff complained of his injuries or made allegations against officers to the medical staff.  Id.  Nunley pressed on Plaintiff's wounded left elbow when Plaintiff attempted to complain to nurse Wendy Hancock, LPN, about his broken finger

and the black spot in his peripheral vision of his left eye.  Id.
The nurse performed a perfunctory examination of Plaintiff's
injuries.  Id.

Told that he was being charged with battery on law enforcement
officers, Plaintiff gave a recorded statement to the Inspector
General's Office.  Id.  After being transported to Union
Correctional Institution (UCI), Plaintiff went to the medical
clinic, and the staff videotaped his injuries.  Id.  Plaintiff's
head and face were very swollen.  Id. at 13-14.  M. Griffith, R.N.,
and R. Lafontant, M.D., conducted a comprehensive examination of
Plaintiff's injuries.  Plaintiff told Nurse Griffith that he had
been warned not to complain about his injuries.  Id.  The medical
staff ordered emergency transportation to Jacksonville Memorial
Hospital Trauma Center for a CT-scan and medical treatment.  Id.

After returning to UCI, Plaintiff made a sick call request on
March 5, 2014, for treatment of lingering medical issues that were
causing intense pain and discomfort.  Id.  A nurse told Plaintiff
that nothing could be done for him, but he could ask the dormitory
officer for Ibuprofen.  Id.  The injuries of which Plaintiff
complains are permanent disfigurement and limited mobility of the
little finger on Plaintiff's right hand; a black spot obscuring the
peripheral vision in Plaintiff's left eye; loss of hearing in
Plaintiff's right ear; migratory cerebral pain; tingling and
numbness of the right side of Plaintiff's face; vertigo; feeling

inflated or deflated; disorientation; chronic lower back and leg pain; and psychological issues (paranoia, timidity, disturbing thoughts and dreams).  Id. at 15.

## II.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

## III.  Defendant Jones

Defendant Jones asserts that she was not the Secretary of the Florida Department of Corrections in February 2014, or prior thereto.  Defendants' Motion to Dismiss at 13.  Plaintiff, in his Response, withdraws his claim of supervisory liability against Secretary Julie Jones.  Since that is the only claim in this action

against Julie Jones, the Secretary of the Florida Department of Corrections, she will be dismissed from this action.

## IV.  Verbal Abuse

To the extent Plaintiff is claiming that Defendant Nunley's verbal threats constitute a constitutional violation, the Defendants' Motion to Dismiss is due to be granted.  With respect to the alleged use of abusive language, such allegations do not state a claim of federal constitutional dimension.  See Hernandez v. Fla. Dep't of Corr., 281 F. App'x. 862, 866 (11th Cir. 2008) (per curiam) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)) ("Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats[,] and verbal abuse alone is insufficient to state a constitutional claim."), cert. denied, 555 U.S. 1184 (2009).

> "[M]ere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations."  Coyle v. Hughes, 436 F.Supp. 591, 593 (W.D. Okl[a]. 1977).  "Were a prisoner . . . entitled to a jury trial each time that he was threatened with violence by a prison guard, even though no injury resulted, the federal courts would be more burdened than ever with trials of prisoner suits . . . ."  Bolden v. Mandel, 385 F.Supp. 761, 764 (D. Md. 1974).  See Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) (the use of words, no matter how violent, does not comprise a section 1983 violation).

McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. denied, 464
U.S. 998 (1983). As such, Defendants' Motion to Dismiss concerning
Plaintiff's claim regarding Nunley's verbal threats is due to be
granted.

### V.  Heck-Bar

Defendants assert that Plaintiff's claim of excessive use of
force is barred because his allegations call into question the
validity of Plaintiff's two disciplinary convictions for battery or
attempted battery on a corrections officer, for which Plaintiff
lost future gain time.  Defendants' Motion to Dismiss at 6-8.  See
Declaration of CPC Russ Pridgeon (Doc. 22-3) regarding forfeiture
of future gain time.

In this regard, the record shows that on February 25, 2014,
Officer Summerall wrote a disciplinary report against Plaintiff for
battery or attempted battery of a correctional officer.
Defendants' Exhibit A (Doc. 22-1).  The Disciplinary Report, Log #
231-140240, charges the following:

> Inmate Merrill, Brian DC#974374 is being
> charged with (1-15) battery or attempted
> battery on a correctional officer, which is a
> violation of the rules of prohibited conduct.
> On February 25, 2014, I was assigned as O-
> Dormitory housing supervisor. At
> approximately 0845 hours, I was present in the
> vestibule area of O-Dormitory counseling with
> inmate Merrill.  Inmate Merrill then began
> striking me in the facial area with clenched
> fists.  Inmate Merrill refused all orders to
> cease his combative behavior as he continued
> to strike me in the facial and upper torso
> area with clenched fists, refusing to submit

- 10 -

> to hand restraints. Inmate Merrill's
> combative behavior resulted in a reactionary
> chemical and physical use of force as
> additional staff arrived to assist. Inmate
> Merrill was placed in administrative
> confinement pending the disposition of this
> report. I sustained multiple facial injuries
> as a result of this incident. Photographs of
> the injuries were taken as evidence and
> attached.

Defendants' Exhibit A at 1 (capitalization omitted) (Doc. 22-1).

Plaintiff did not attend the disciplinary proceeding and made

no plea. Id. The disciplinary team found Petitioner guilty. Id.

The basis given for the decision is:

> Subject was found guilty of charge 1-15 based
> on eyewitness testimony of Officer Summerall
> that subject struck him [in] the face with a
> clinched [sic] fist. All attachments were
> read and considered. Subject refused to be
> present at the hearing and signed DC6--112D.

Id. (capitalization omitted).

The recorded disciplinary action is sixty days of disciplinary

confinement and a loss of 180 days of future gain time.[5] Id. at 2.

The disciplinary report has not been overturned and remains on

Plaintiff's institutional record. Defendants' Motion to Dismiss at

4, 11.

Also of record, on February 25, 2014, Officer Herring wrote a

disciplinary report against Plaintiff for battery or attempted

battery of a correctional officer. Defendants' Exhibit B (Doc. 22-

---

[5] Plaintiff had no accrued gain time available to be
immediately forfeited. Defendants' Exhibit A at 2 (Doc. 22-1).

2).   The  Disciplinary  Report,  Log  #  231-140241,  charges  the

following:

> Inmate  Merrill,  Brian  DC#974374  is  being
> charged  with  (1-15)  battery  or  attempted
> battery  on  a  correctional  officer,  which  is  a
> violation  of  the  rules  of  prohibited  conduct.
> On  February  25,  2014,  I  was  assigned  as  O-
> Dormitory  housing  officer.   At  approximately
> 0846  hours,  I  responded  to  the  vestibule  area
> of  O-Dormitory  to  assist  Sergeant  W.  Summerall
> in  restraining  Inmate  Merrill.   Inmate  Merrill
> then  began  striking  me  in  the  facial  area  and
> torso  area  with  clenched  fists.     Inmate
> Merrill  refused  all  orders  to  cease  his
> combative  behavior  as  he  continued  to  strike
> me  and  Sergeant  Summerall  with  clenched  fists,
> refusing  to  submit  to  hand  restraints.   Inmate
> Merrill's  combative  behavior  resulted  in  a
> reactionary  chemical  and  physical  use  of  force
> as  additional  staff  arrived  to  assist.   Inmate
> Merrill   was   placed   in   administrative
> confinement  pending  the  disposition  of  this
> report.   I  sustained  facial  injuries  and  an
> injury  to  my  left  arm  as  a  result  of  this
> incident.   Photographs  of  the  injuries  were
> taken  as  evidence  and  attached.

Defendants' Exhibit B at 1 (capitalization omitted) (Doc. 22-2).

Plaintiff did not attend the disciplinary proceeding and made

no plea.  Id.  The disciplinary team found Petitioner guilty.  Id.

The basis given for the decision is:

> Subject  was  found  guilty  of  charge  1-15  based
> on  eyewitness  testimony  of  Officer  Herring
> that  subject  struck  him  in  the  face  and  torso
> area.    All   attachments   were   read   and
> considered  B  [sic].   Subject  refused  to  be
> present  at  the  hearing  and  signed  DC6--112D.

Id. (capitalization omitted).

The recorded disciplinary action is sixty days of disciplinary confinement and a loss of 180 days of future gain time.[6]  Id. at 2. The disciplinary report has not been overturned and remains on Plaintiff's institutional record.  Defendants' Motion to Dismiss at 5, 11.

Defendants assert a Heck-bar defense, relying on Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997).  Defendants' Motion to Dismiss at 6.  See Palmer v. Laux, No. 2:10-cv-438-FtM-29DNF, 2011 WL 4029085, at *8 (M.D. Fla. Sept. 12, 2011) (Not Reported in F.Supp.2d) (finding the plaintiff steered his case into Heck territory by raising claims directly contrary to the facts upon which the disciplinary charges were based).  Defendants Certain, Hale, Miara, Nunley, and Sievers contend that successful prosecution of Plaintiff's claims in this case would necessarily imply the invalidity of the institutional orders imposing disciplinary punishment and that such a claim cannot be maintained under § 1983 unless and until the disciplinary orders have been set aside as a result of other available remedies. See Heck, 512 U.S. 477; Woodford v. Ngo, 548 U.S. 81 (2006).  The Supreme Court, in Heck, emphasized that it was not imposing an exhaustion requirement upon 42 U.S.C. § 1983 actions, but, "'rather den[ied] the existence of a cause of action' altogether."  Harden

_____

[6] Plaintiff had no accrued gain time available to be immediately forfeited.  Defendants' Exhibit B at 2 (Doc. 22-2).

v. Pataki, 320 F.3d 1289, 1294 (11th Cir. 2003) (quoting Heck, 512 U.S. at 489)).

The Heck-bar has been extended to prison disciplinary determinations if the civil rights claim would necessarily affect the fact or duration of confinement:

> In Heck, the Supreme Court held that if a judgment in favor of the plaintiff on his § 1983 claim for money damages "would necessarily imply the invalidity of his conviction or sentence," the district court must dismiss the complaint, unless the conviction or sentence has already been invalidated. 512 U.S. at 487, 114 S.Ct. at 2372. The Court later extended this bar to prison disciplinary judgments that result in the deprivation of good-time credits. See Edwards, 520 U.S. at 646-48, 117 S.Ct. at 1588-89. However, Heck only applies to prison disciplinary determinations if a prisoner's § 1983 claim would necessarily affect the fact or duration of his confinement. See Wilkinson v. Dotson, 544 U.S. 74, 79, 81-82, 125 S.Ct. 1242, 1246-48, 161 L.Ed.2d 253 (2005); Muhammad v. Close, 540 U.S. 749, 754, 124 S.Ct. 1303, 1306, 158 L.Ed.2d 32 (2004). Thus, as we have made clear, the same facts underlying a conviction, or in this case, a disciplinary judgment, can also give rise to a § 1983 claim without implicating Heck. Dyer v. Lee, 488 F.3d 876, 879-80 (11th Cir. 2007) ("[A]s long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not Heck-barred.").

Davis v. Hodges, 481 F. App'x 553, 554 (M.D. Fla. 2012) (per curiam).

Therefore, it is clearly established law that an action under § 1983 simply will not lie and should be dismissed if the remedy or

remedies sought in the action would "necessarily imply the invalidity of the punishment imposed" in a prison disciplinary proceeding.  Additionally, under Bryant v. Rich, the Court may accept evidence and act as a fact-finder to resolve the threshold issues to resolve all matters in abatement.  Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir.) ("it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits"), cert. denied, 555 U.S. 1074 (2008).

Plaintiff, in his Amended Complaint and in his Response, states that he is not seeking injunctive relief to overturn, expunge or reverse the disciplinary report or to restore his gain time.  Amended Complaint at 6; Response at 2, 5.  Instead, he argues that he is entitled to monetary damages for an Eighth Amendment violation, the excessive use of force.  Response at 4. He attempts to distinguish his case by asserting that his disciplinary convictions have no bearing on the Eighth Amendment claims against the Defendants for excessive force.  Id.  He further states that there is nothing in his Amended Complaint remotely suggesting that he seeks to have his disciplinary report convictions overturned.  Id. at 5.

Plaintiff's "argument that Heck is inapplicable because he is not seeking to expunge his disciplinary actions misses the mark." Richards v. Dickens, 411 F. App'x 276, 278 (11th Cir. 2011) (per

curiam) (holding the inmate's challenge to a prison disciplinary conviction that resulted in the loss of gain time was barred by Heck; the disciplinary conviction for assault on a law enforcement officer was premised on the fact that the inmate started the scuffle, and the inmate's claims for excessive force were premised on the fact that the prisoner acted in self-defense; thus, his claims implied the invalidity of the disciplinary conviction).  In this instance, "the relevant inquiry is not whether a prisoner explicitly seeks to reinstate his good-time credits, but instead whether the § 1983 claims call into question the validity of the deprivation of those credits."  Id.  Also, dismissal pursuant to "the principles announced in Heck may be appropriate regardless of the kind of relief sought."  Esensoy v. McMillan, No. 06-12580, 2007 WL 257342, at *1 n.6 (11th Cir. 2007) (per curiam) (citation omitted), cert. denied, 552 U.S. 1097 (2008).

Although this is a close case, upon careful consideration of the Amended Complaint, the documents, and exhibits submitted to the Court, the Court is convinced that a substantial portion of the excessive force claim raised against Defendants Certain, Hale, Miara, Nunley, and Sievers is Heck-barred.

Plaintiff contends that he was subjected to chemical spraying and physical force for reasons other than he struck Officer Summerall, refused to obey verbal orders to cease his actions, and resisted restraint - a claim that would necessarily imply the

invalidity of the punishment imposed.   Indeed, Plaintiff alleges that Summerall, without justification, or more accurately with improper motive and out of anger, attempted to strike Plaintiff.[7] Thus, he is contending that he was subjected to an unprovoked attack, for improper reasons, and the disciplinary reports are false as he was simply defending himself.

Notably, Summerall's disciplinary report states that he was attempting to counsel Merrill when Merrill struck him in the face. Additionally, it states that Merrill refused all orders to cease his actions, and continued to strike Summerall in the face and upper torso, while refusing to submit to being placed in hand restraints.   Again, the force used by the officers is described as reactionary chemical and physical force.

Herring's report similarly describes the events.   Herring responded to assist Summerall in restraining Merrill.   Merrill struck Herring in the face and torso.   Merrill is described as refusing to cease his combative actions, continuing to strike both Herring and Summerall, and refusing to submit to hand restraints.

---

[7] This is not a case in which Plaintiff admitted that yes, he instigated the altercation by striking Summerall first, without justification, and disobeyed verbal orders to cease his combative behavior, he was properly disciplined for that infraction, but the officers used excessive force in subduing him.   Instead, Plaintiff alleges in his Amended Complaint that Summerall was angry and tried to strike him and Plaintiff was in a defensive, rather than offensive position when the events in question unfolded. Furthermore, Plaintiff alleges that he was chemically sprayed and beaten after he was subdued and restrained in handcuffs in O dormitory, entirely contrary to the description of the incident provided in both disciplinary reports.

Herring describes the force used as reactionary chemical and physical force. Of note, both officers stated they sustained injuries.

In his verified Amended Complaint, Plaintiff states that Summerall tried to strike him first, Plaintiff responded by striking Summerall in the face, and Plaintiff simply defended himself against Officer Herring, who grabbed him from behind. When the other officers arrived, Plaintiff states he was immediately struck from behind, handcuffed behind his back, and ceased resisting.

Of import, the disciplinary reports otherwise describe the elements of the infraction; therefore, this Court finds that Plaintiff's allegations would necessarily invalidate the revocation of his gain-time credits. Of note, the report specifically states that Plaintiff was the aggressor, striking Summerall as Summerall attempted to counsel with him. Additionally, both reports state that the correctional officers gave repeated orders to Plaintiff to cease his combative actions, to no avail. The reports further state that reactionary uses of physical and chemical force were employed by the officers as a result of Plaintiff's combative actions and refusal to obey orders to cease and desist. The findings of guilt are based on the charges and the eyewitness testimonies of Summerall and Herring. Of import, Plaintiff refused

to attend the disciplinary proceedings and defend himself against both battery charges.

A judgment in Plaintiff's favor would necessarily imply the invalidity of his disciplinary reports and the loss of 360 days of gain time Plaintiff received for the incident which occurred in the sally-port of O dormitory.  Plaintiff is alleging that he was subjected to an unprovoked and unjustified attack and subjected to unjustified uses of force, including chemical spraying, in response to an incident that occurred the day before when Plaintiff was caught applying a tattoo on another inmate and escaped immediate confinement.  See LaFlower v. Kinard, No. 2:10-cv-82-FtM-29SPC, 2011 WL 2183555, at *3 (M.D. Fla. June 6, 2011) (Not Reported in F.Supp.2d) (finding the case Heck-barred when the plaintiff alleged an unprovoked, retaliatory attack for past lawsuits, not a claim concerning the magnitude of the force used in response to his failure to comply with orders).  He submits that the brunt of this assault occurred while he was already subdued and restrained behind his back.  Indeed, he states that he was chemically sprayed after he was handcuffed behind his back.  Plaintiff has not alleged the reversal of the disciplinary reports or presented documents showing that he has caused the disciplinary proceedings to be set aside through administrative, state or federal remedies available to him. Unless and until the disciplinary reports have been overturned, Plaintiff has no claim for money damages.  Of import, at this

juncture, the record shows that the disciplinary reports have not been overturned.[8]

Therefore, based on the above, Defendants' Motion to Dismiss based on the Heck-bar defense is due to be granted with respect to the claims against them for what occurred in the sally-port area of the O dormitory.  These excessive force claims will be dismissed without prejudice to Plaintiff's right to refile his claims in a new civil rights case against Defendants Certain, Hale, Miara, Nunley, and Sievers under 42 U.S.C. § 1983 when he can demonstrate that the disciplinary reports have been overturned.  Again, a petition for writ of habeas corpus would be the proper method to challenge the disciplinary proceedings and the results of those proceedings.

There is, however, more to this case than the claims of excessive force against the Defendants for what occurred in the sally-port of O dormitory, which are Heck-barred.  In a portion of the Amended Complaint, Plaintiff is clearly alleging the officers use of force in response to the sally-port incident was excessive. Plaintiff alleges the following occurred after he exited O dormitory.  Nunley repeatedly chemically sprayed him and bent Plaintiff's little finger backwards, breaking the finger in several places.  Hale punched Plaintiff in the face and head with

---

[8] To the extent Plaintiff seeks reversal of the disciplinary reports and restoration of his gain time, the proper method for seeking such relief in this Court is by filing a petition for writ of habeas corpus after exhausting state court remedies.

handcuffs.   Certain struck Plaintiff on the head with a walkie talkie radio.   Miara and Sievers kicked Plaintiff.   Hale and Certain struck Plaintiff on the head and body. Finally, Nunley pressed on Plaintiff's wounded left elbow.   All of these alleged events occurred after the incident in the O dormitory, which was the subject of the two disciplinary reports.

Defendants' Motion to Dismiss is due to be denied with respect to the claims of excessive force against the Defendants for what allegedly occurred after Plaintiff exited O dormitory.   This portion of the Amended Complaint is not <u>Heck</u>-barred.

## VI.   Defendant Landrum

The remaining claim is raised against Defendant Landrum. Plaintiff claims that Landrum, the former Warden of SCI, should be held accountable for the actions of his subordinate officers because he did have, or should have had, reasonable knowledge of the alarming increase in excessive uses of force at SCI during the period from 2013 to 2014.   Plaintiff contends that Landrum failed to take measures to prevent the excessive use of force and to preserve videographic records.

In his Response to Landrum's Motion, Plaintiff states he is not seeking sanctions for spoilation of videotapes.   Response to Landrum's Motion at 18.   As a result, the Court will not address Plaintiff's assertion that Landrum failed to preserve evidence. Plaintiff states his claim against Landrum is based on a history of

widespread abuse at SCI and failure to train officers concerning proper physical and chemical force protocols. Id. at 10-11.

Of significance, Defendant Landrum may not be held liable under a theory of respondeat superior.

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez,[9] 325 F.3d at 1234 (internal quotation marks and citation omitted). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) (overruled on other grounds); see Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998) (finding supervisory liability requires something more than stating a claim of liability under a theory of respondeat superior).

With regard to supervisory liability, the Eleventh Circuit directs:

> In a § 1983 suit, liability must be based on something more than respondeat superior. Brown,[10] 906 F.2d at 671. Supervisory

---

[9] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

[10] Brown v. Crawford, 906 F.2d 667 (11th Cir. 1990), cert. denied, 500 U.S. 933 (1991).

> liability can be found when the supervisor
> personally participates in the alleged
> constitutional violation, or when there is a
> causal connection between the supervisory
> actions and the alleged deprivation. <u>Id</u>. A
> causal connection can be established through a
> showing of a widespread history of the
> violation. <u>Id</u>. at 672.

<u>Reid v. Sec'y, Fla. Dep't of Corr.</u>, 486 F. App'x 848, 852 (11th Cir. 2012).

In this case, Plaintiff claims that there was a widespread history of unjustified, excessive uses of force by officers at SCI from 2013 to February, 2014, and Defendant Landrum failed to take "therapeutic measures" to prevent the continued use of improper and excessive force by corrections officers at that institution, giving rise to the incident which occurred on February 25, 2014. Amended Complaint at 7. Construing the Amended Complaint liberally, as this Court must, there is facial plausibility as to an Eighth Amendment claim against Defendant Landrum. Indeed, Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Therefore, Defendant Landrum's Motion to Dismiss is due to be denied.

Therefore, it is now

**ORDERED:**

1. Plaintiff withdraws his claim against Defendant Julie Jones, Secretary, Florida Department of Corrections; therefore, **Defendant Julie Jones, Secretary, Florida Department of Corrections**, is hereby **DISMISSED** from this action.

- 23 -

2.    Defendants' [Certain, Hale, Miara, Nunley, and Sievers] Motion to Dismiss Amended Complaint (Doc. 27) is **GRANTED** to the extent the claims of excessive force raised against them for what occurred in the sally-port area of the O dormitory are found to be Heck-barred and are dismissed without prejudice.  As such, these claims against Defendants Certain, Hale, Miara, Nunley, and Sievers are **DISMISSED without prejudice** to Plaintiff's right to refile his claims against them under 42 U.S.C. § 1983 when Plaintiff can demonstrate that the disciplinary reports have been overturned. Defendants' [Certain, Hale, Miara, Nunley, and Sievers] Motion to Dismiss Amended Complaint (Doc. 27) is also **GRANTED** with respect to the verbal abuse claim raised against Defendant Nunley, and that claim is **DISMISSED**.

3.    Defendants' [Certain, Hale, Miara, Nunley, and Sievers] Motion to Dismiss Amended Complaint (Doc. 27) is **DENIED** with respect to the claims of excessive force raised against them for actions that allegedly occurred after Plaintiff exited the O dormitory at SCI.  Defendants Certain, Hale, Miara, Nunley, and Sievers shall respond to these particular allegations of excessive force contained within the Amended Complaint by **December 28, 2016.**

4.    Defendant Landrum's Motion to Dismiss Amended Complaint (Doc. 36) is **DENIED.**  Defendant Landrum shall respond to the Amended Complaint by **December 28, 2016.**

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of October, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 10/26
c:
Brian Thomas Merrill
Counsel of Record